# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH SHEGOG,<br><br>    Petitioner,<br><br>v.<br><br>NANCY GIROUX, Superintendent,<br>District Attorney of Beaver County, and<br>THE ATTORNEY GENERAL OF THE<br>STATE OF PENNSYLVANIA,<br><br>    Respondents. | Civil Action No. 2: 14-cv-1701<br><br>United States Magistrate Judge<br>Cynthia Reed Eddy |

## MEMORANDUM OPINION[1]

Before the Court is the counseled Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") filed on behalf of Petitioner, Joseph Shegog ("Petitioner" or "Shegog"). Shegog is currently incarcerated in the State Correctional Institution in Albion, Pennsylvania. For the reasons that follow, the Petition will be dismissed and a certificate of appealability will be denied.

### Relevant and Procedural Background

Shegog is challenging the judgment of sentence imposed upon him by the Court of Common Pleas of Beaver County on December 15, 2005. The charges against Shegog stem from the December 24, 2000, homicide of Joseph Anderson. According to the Commonwealth's theory of the case and evidence adduced at trial, Shegog shot and killed Anderson. At trial, Shegog advanced an innocence defense. Following a jury trial presided over by the Honorable

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of a final judgment. *See* ECF Nos. 30 and 32.

1

John D. McBride of the Court of Common Pleas of Beaver County, Shegog was convicted of Murder in the First Degree and Carrying a Firearm Without a License. On January 11, 2006, Shegog was sentenced to a mandatory sentence of life imprisonment without the possibility of parole.

Shegog appealed his conviction and sentence to the Superior Court of Pennsylvania. Shegog, through counsel, raised seven challenges, none of which are raised in the instant federal habeas case. Shegog's conviction and sentence were affirmed on September 11, 2007, and the Supreme Court of Pennsylvania denied review by order dated November 30, 2009.

Unsuccessful on direct appeal, Shegog filed a *pro se* petition for collateral review under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 - 9546. Counsel was appointed and filed a Supplemental PCRA Petition raising nine (9) claims of ineffective assistance of counsel and three (3) constitutional claims. On April 8, 2013, the PCRA court denied each of Shegog's claims.[2] On appeal, the Superior Court of Pennsylvania affirmed the PCRA order. The Supreme Court of Pennsylvania again denied review.

Having been denied relief in state court, on December 16, 2014, Shegog filed in this Court a *pro se* habeas petition and on January 26, 2015, requested an extension of time in which to file an Amended Petition. Shegog was granted an extension until March 2, 2015, to file his Amended Petition. On February 27, 2015, Shegog requested another extension to file his Amended Petition, which requested was granted and Shegog was given an extension until May 8, 2015, to file his Amended Complaint. On May 5, 2015, counsel entered his appearance for

---

[2]   Judge John McBride D. McBride presided over Shegog's trial and the PCRA proceedings. *See Commonwealth v. Ligons*, 971 A.2d 1125, 1140 (Pa. 2009) (noting in passing "that the PCRA judge . . . [is] oftentimes . . . the same judge who presided over the petitioner's trial").

2

Shegog. Thereafter, counsel sought a number of extensions of time to file an Amended Petition and brief in support. On September 1, 2015, counsel filed an Amended Petition (ECF No. 13) and the following month, on October 16, 2015, filed a brief in support of the Amended Petition. (ECF No. 18). On October 25, 2015, filed amended the Petition to correct a "slight technical matter." (ECF No. 21). The Amended Petition filed at ECF No. 21, remains the operative petition.

Through his counseled Amended Petition, Shegog raises the following three ineffective assistance of counsel claims, which are similar to claims he raised on collateral review:

> GROUND ONE: Petitioner's Sixth Amendment right to a public trial was violated due to ineffective assistance of counsel for not objecting to procedure where part of the jury selection was closed to the public as well as to Petitioner's family. The public's right to attend the jury selection process is a clearly established right under federal law.
>
> GROUND TWO: Petitioner was denied effective assistance of counsel because trial counsel had a conflict of interest.
>
> GROUND THREE: Trial counsel was ineffective for failing to conduct an adequate investigation and call an available exculpatory eyewitness, Rashawdi Pugh, at trial, who would have testified that he saw the decedent reaching for and drawing a gun when he was shot, supporting a claim of self-defense.

Habeas Pet. (ECF No. 21). Respondents filed a timely Answer (ECF No. 24), to which Shegog filed a traverse reply brief (ECF No. 27). The matter is fully briefed and ripe for disposition.

  **B. Standard of Review**

Because it is not contested that each of Shegog's ineffective assistance of counsel claims were adjudicated on the merits by the Superior Court of Pennsylvania, review of his claims is subject to the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"). Under AEDPA, habeas relief is unavailable unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

3

determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254.

A decision by a state court is "contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth" in United States Supreme Court precedent. *Price v. Vincent*, 538 U.S. 634, 640 (2003). (quotations and citations omitted). A state court need not have cited any particular Supreme Court decisions, and this standard affords considerable latitude to the state court, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. *Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam). In this regard, the state court's decision need not even be accompanied by an explanation, as long as there was a "reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

However, "when the state court pens a clear, reasoned opinion, federal habeas courts may not speculate as to theories that 'could have supported' the state court's decision. *Dennis v. Sec'y, Pa. Dep't of Corrs*., 834 F.3d 263, 283 (3d Cir. 2016) (en banc). If the state court does provide reasoning, the state court decision is not entitled to deference if no "fairminded jurist []" could "disagree that those arguments or theories are not consistent with the holding in a prior decision of" the Supreme Court. *Richter*, 562 U.S. at 102. The state court may not add or remove a factor from a clearly established federal law test. *Dennis*, 834 F.3d at 307.

Petitioner's claims will be reviewed with these standards in mind.

### C. Discussion[3]

The federal claims here are each an ineffective assistance of counsel claim, which requires the petitioner to establish (i) constitutionally deficient representation, and (2) the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong of counsel ineffectiveness,

> a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. In addition, although a petitioner must satisfy both prongs to succeed on his ineffectiveness claim, the Supreme Court noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697.

---

[3] The first consideration in reviewing a federal habeas petition is whether the petition was timely filed under AEDPA's one-year limitations period. 28 U.S.C. § 2244(d). Respondents argue that the petition was not timely filed. However, Respondents have made a number of calculation errors, and the Court finds that the Petition was in fact timely filed. Shegog's judgment became final on March 1, 2010, ninety (90) days after November 30, 2009, the date the Supreme Court of Pennsylvania denied allowance of appeal. He filed his PCRA petition on December 3, 2010. This timely PCRA petition tolled the AEDPA statute of limitations, but 277 days had passed before the statute of limitations was tolled. The tolling period ended on September 23, 2014, when the Pennsylvania Supreme Court denied Shegog's petition for allowance of appeal. Because 277 days had already expired on the AEDPA clock, Shegog had eighty-eight (88) days left to file his federal petition, or until December 22, 2014. Giving Shegog the benefit of the prisoner mailbox rule, the instant petition for writ of habeas corpus was filed on October 21, 2014, the date the original Petition was signed, clearly within the AEDPA filing deadline.

The United States Court of Appeals for the Third Circuit has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to *Strickland*. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *see also Commonwealth v. Pierce,* 527 A.2d 973, 976 (Pa. 1987) (expressly stating that Pennsylvania follows the *Strickland* standard of review). Thus, the relevant question is here is whether the decisions of the Superior Court of Pennsylvania involve an unreasonable application of *Strickland*. *Jacobs v. Horn*, 395 F3d 92, 106 n.9 (3d Cir. 2005). That is, a petitioner must show that the state courts "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

When resolving an ineffectiveness of counsel issue, the question is not whether the defense was free from errors of judgment, but whether defense counsel exercised the customary skill and knowledge that normally prevailed at the time and place. *Strickland,* 466 U.S. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and ha[s] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms'." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 699).

Petitioner's claims will be addressed seriatim.

<u>Claim One</u>

In his first claim, Shegog alleges that his Sixth Amendment right to a public trial was violated when trial counsel failed to object to the procedure where individual *voir dire* was closed to the public and to his family. The Sixth Amendment guarantees the "accused . . . the right to a . . . public trial," U.S. Const. amend. VI, and extends that guarantee to the *voir dire* of potential jurors. *Presley v. Georgia,* 558 U.S. 209 (2010). This right, however, is not absolute. An unjustified courtroom closure only infringes a defendant's Sixth Amendment rights if it

6

undermines the values the Supreme Court identified in *Waller v. Georgia,* 467 U.S. 39 (1984), as fundamental to the public trial guarantee. If the closure did not jeopardize or subvert these values, which (1) ensure a fair trial, (2) remind the government and judge of their responsibility to the accused and importance of their functions, (3) encourage witnesses to come forward, and (4) discourage perjury, it did not offend the Sixth Amendment because the closure is considered trivial. *United States v. Patton*, 502 F. App'x 139, 141–42 (3d Cir. 2012).

In this case, the PCRA court noted that the general *voir dire* was conducted in open court with the entire jury pool present. The individual *voir dire*, however, was conducted in the attached deliberation room with limited public access. *Commonwealth v. Shegog*, No. 525 of 2001, slip op (Ct. Comm. Pl. April 8, 2013) (ECF No. 21-1). The ineffective assistance of trial claim serves as the vehicle for the actual error alleged - the Superior Court of Pennsylvania's analysis of whether there was a violation of Shegog's right to a public trial under Supreme Court precedent. *Tucker v. Superintendent Graterford SCI*, 677 F. App'x 768, 775 (3d Cir. 2017).

The PCRA court, relying upon *Commonwealth v. Berrigan*, 501 A.2d 226 (Pa. 1985), and Pa. Rule of Criminal Procedure 631,[4] rejected Shegog's claim finding that Shegog was afforded the right to a public trial as general *voir dire* "was conducted in open court for the public, media and family to view." PCRA opinion (ECF No. 21-1 at 12).

---

[4] Pa. Rule of Criminal Procedure 631(F)(1)(a) provides:

In non-capital cases, the trial judge shall select one of the following alternative methods of *voir dire*, which shall apply to the selection of both jurors and alternatives:
(1) *Individual Voir Dire and Challenge System*
    (a) *Voir dire* of prospective jurors shall be conducted individually and may be conducted beyond the hearing and presence of other jurors.

The Superior Court, also relying upon Pa. Rule of Criminal Procedure 631 and engaging in a Sixth Amendment analysis, determined that because there was no viable Sixth Amendment claim, there was no arguable merit to Shegog's ineffective assistance of counsel claim in this regard. *Commonwealth v. Shegog*, No. 697 WDA 2013, slip opinion (Feb. 26, 2014) (ECF No. 21-2).[5]

The standard applied by the Superior Court, however, is contrary to *Waller.* "The standard articulated in *Berrigan* that allows 'reasonable restrictions' on public access to the courtroom is inconsistent with the narrow tailoring required by *Waller.*" *Tucker*, 677 F. App'x at 776. Therefore, in an abundance of caution, the Court will review this claim *de novo*.

Challenges to *voir dire* procedures similar to the one utilized in this case have been denied by the United States Court of Appeals for the Third Circuit. *See United States v. Bansal*, 66 F.3d 646, 661 (3d Cir. 2011); *United States v. Vaghari,* 500 F. App'x 139 (3d Cir. 2012). In those cases, the appellate court found that the defendant's right to a public trial was not violated by conducting individual *voir dire* behind "closed doors." Similar to the procedures utilized in those cases, the trial court in this case did not close the courtroom or explicitly exclude any member of the public or Shegog's family from observing *voir dire*. Although certain portions of the individual *voir dire* did take place behind "closed doors," doing so was the functional equivalent of a sidebar discussion and no more improper than that commonly accepted practice. *See United States v. Smith*, 787 F.2d 111, 114 (3d Cir. 1986) ("[T]he public and press may be justifiably excluded from sidebar and chambers conferences even when substantive rulings are made.").

---

[5] In its analysis, the Superior Court relied upon its prior decision in *Commonwealth v. Phillips,* 949 A.2d 103, 109 (Pa. Super. 2008), which in turn relied upon the Pennsylvania Supreme Court's decision in *Berrigan*.

Given that Shegog's Sixth Amendment right to a public trial was not violated, the Court finds that Shegog's first claim fails under *Strickland* as counsel cannot be found ineffective for failing to raise a meritless claim.

Claim Two

In his second claim, Shegog alleges that he "was denied effective assistance of counsel because trial counsel had a conflict of interest." Amended Pet., Ground Two, at 7. (ECF No. 21).

Shegog claims that trial counsel visited him in the Beaver County Jail prior to court proceedings and neither Shegog nor his mother had contacted trial counsel or retained him to represent Shegog. As supporting facts for this claim, the Amended Petition states as follows:

> After Petitioner surrendered to authorities in 2005, Attorney [Gerald V.] Benyo showed up at the Beaver County Jail and told Petitioner that he would represent him for free; that one Terrell Lindsey would pay his legal pays if Petitioner would provide a statement that Lindsey was responsible for Shegog turning himself in (see PCRA, pp 10-13, 95-99). Petitioner went along with the sham, provided such a statement to Benyo, who then turned the statement over to Lindsey's lawyers to use in a federal case to get Lindsey a lighter sentence. The federal docket shows that Terrell Lindsey ultimately pled guilty to serious drug charges in Ohio and received the benefits of a government 5K motion (see Exhibit 3). The record also shows that Lindsay had been released on bail before Shegog turned himself in to authorities. So, the factual scenario presented by Petitioner during the PCRA process is supported by the record in Lindsay's federal case (see Exhibits 3 & 4). Therefore, it cannot be gainsaid (sic) that trial counsel had a conflict of interest in representing Petitioner. First, trial counsel violated his duty to his client by having him falsify evidence used in Lindsay's federal case; second, because of the lack of funding by Lindsay, trial counsel did not investigate (PCRA, p. 23) and consequently failed to call an available exculpatory witness, Rashawdi Pugh (see Ground 3 infra) which would have changed to (sic) outcome of the trial.

Amended Petition at 7 (ECF No. 21).

This issue was raised on collateral review. During the PCRA hearing, Shegog testified that he did not have any money to pay for legal representation. He testified that although he did not know attorney Benyo or Terrell Lindsey, he agreed to whatever attorney Benyo advised him

9

to do because he did not want to be represented by the public defender. Transcript of PCRA proceedings, 9/17/2012, 93-99 (ECF No. 24-13). Shegog's cousin, Jamar Shegog, testified at the PCRA hearing that Terrell Lindsey was a friend of his, and that the agreement was made when Terrell Lindsey contacted him to make the deal whereby Petitioner would make a statement that Terrell Lindsey was responsible for Petitioner turning himself in and in exchange Lindsey would help pay for Shegog's legal fees. *Id*. at 90, 91 (ECF No. 24-13).

The PCRA court denied the claim explaining:

> Trial counsel testified that during his representation of the Defendant he arranged to memorialize an agreement between Mr. Lindsay and Mr. Shegog. Trial counsel did not represent Mr. Lindsay in any capacity.[3] The deal made between Mr. Lindsay and Mr. Shegog included that Mr. Lindsay was to contribute to paying for Defendant's legal defense in exchange for Mr. Shegog's testimony that Mr. Lindsey was responsible for Defendant turning himself in five (5) years after the murder of Joseph Anderson. This agreement was made when Defendant's cousin, Jamar Shegog, was contacted by Mr. Lindsey with the deal.[4] Nothing in the facts presented shows an actual conflict of interest existed at any time while Defendant was represented by trial counsel. The issue is without merit.
>
> ---
> [3] PCRA Transcript of Sept. 17, 2012, Volume I, page 10, line 25 and page 11 line 1.
> [4] PCRA Transcript of Sept. 17, 2012, Volume I, page 91.
> ---

PCRA Court Opinion, 4/8/2013, at *12.

The Superior Court found that the testimony from the PCRA hearings supported the PCRA court's conclusion. Specifically, the Superior Court noted that trial counsel testified at the PCRA hearing that he did not represent Terrell Lindsay in any capacity and that Shegog's cousin, Jamar Shegog, arranged for a deal for Lindsey to contribute to pay for Shegog's legal

10

defense in exchange for Shegog's testimony that Mr. Lindsey was responsible for Shegog turning himself in five (5) years after the murder.[6]

Further, the Superior Court found that in addition to not establishing that there had been an actual conflict, Shegog had failed to demonstrate prejudice:

> [T]rial counsel conducted a reasonable pre-trial investigation based upon the information he had prior to trial from discovery, police reports, witness statements, and information provided by Appellant and his family. Hence, a paid investigator was unnecessary and, therefore, there is no factual predicate that Lindsey somehow controlled trial counsel's representation of Appellant to his detriment. Accordingly, Appellant has not proven actual prejudice and his first claim fails.

Superior Court memorandum, 2/26/2014, at 7-8 (ECF NO. 21-2 at 7-8).

The Sixth Amendment guarantees a criminal defendant counsel's "undivided loyalty." *Government of Virgin Islands v. Zepp,* 748 F.2d 125, 131 (3d Cir. 1984). In *Mickens v. Taylor*, the United States Supreme Court defined an "actual conflict" as "precisely a conflict that affected counsel's performance – as opposed to a mere theoretical division of loyalties." 535 U.S. 162, 171 (2002). Although *Mickens* concerned a conflict arising out of trial counsel's prior representation of the victim, the Court of Appeals for the Third Circuit has applied its reasoning to other conflict of interest claims. *See Chester v. Comm'r of Pa. Dep't of Corr*., 598 F. App'x 94 (3d Cir. 2015) (applying *Mickens* to a case in which petitioner alleged his attorney's pending DUI charge in the same court in which petitioner was tried created an actual conflict requiring a new trial). The Supreme Court has explained that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in

---

[6] In fact, Attorney Benyo testified at the PCRA hearing that Mr. Lindsey and/or his representation contributed to Shegog's legal fees, with the total amount that was provided "from all sources" being around "45 or $4,700." Attorney Benyo testified that there were funds put into Shegog's defense by other people besides the Shegog family. Transcript of PCRA testimony, 9/17/2012, at 13-14 (ECF No. 24-12, at 13-14).

order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

After reviewing the transcripts of the PCRA hearing, the Court finds that the decision of the Superior Court easily withstands review under AEDPA. After observing the witnesses and listening to their testimony, the PCRA court found the testimony of trial counsel to be credible. On federal habeas review, the factual finding as to the credibility of trial counsel's testimony is entitled to a presumption of correctness under § 2254(e)(1) and Shegog can only rebut the presumption by clear and convincing evidence, which he has not done.

Shegog has not shown that trial counsel actively represented conflicting interests. Accordingly, the Superior Court applied the correct standard and Shegog has not demonstrated that the Superior Court's decision was an unreasonable application of *Strickland*. For this reason, it is recommended that Shegog be denied habeas relief on this claim.

## Claim Three

In his third and final claim, Shegog argues that trial counsel was ineffective for failing to conduct an adequate investigation and call an available exculpatory eyewitness, Rashawdi Pugh, at trial, who he claims would have testified that he saw the decedent reaching for and drawing a gun when he was shot. This claim was presented and rejected on the merits by both the PCRA court and the Superior Court.

Shegog claims that his trial counsel should have called Rashawdi Pugh as a witness on his behalf because Pugh's testimony would have supported self-defense. An evaluation on the part of defense counsel to call witnesses falls squarely within the first prong of *Strickland*, which pertains to whether the attorney made his tactical decisions "in the exercise of reasonably

professional judgment." *Strickland*, 466 U.S. at 690. *See also Duncan v. Morton*, 256 F.3d 189, 201 (3d Cir. 2001) (citing *Strickland* and concluding that the failure to use certain testimony "amounted to a tactical decision within the parameters of reasonable professional judgment").

Both the PCRA court and the Superior Court concluded that trial counsel had a reasonable strategy in not presenting a claim of self-defense. Counsel testified that Shegog had always maintained that he did not shoot the decedent. The PCRA court credited counsel's testimony and the Superior Court found the testimony of record supported the PCRA court's finding that trial counsel had a reasonable strategic basis for declining to call Pugh as a witness at trial. Further, the Superior Court rejected Shegog's argument "that trial counsel somehow had a duty to independently investigate facts outside of the information provided by [Shegog] . . . Trial counsel must be able to take Appellant's word in constructing a defense. Moreover, while there was a photograph provided to Appellant during discovery showing a gun protruding from the decedent's pocket, such evidence would not have furthered a claim of innocence predicted upon Appellant's absence from the scene." Superior Court Opinion, 2/26/14 at 14.

The Superior Court noted that at trial Shegog and his brother both testified under oath that they were not present at the crime scene. Moreover, upon an independent review of the affidavit of Pugh's proposed testimony and statements Pugh made to police after the shooting, the Superior Court found that Pugh never claimed he saw who shot the decedent. Rather, the record reflects that "Pugh heard gunshots and witnessed the decedent get shot, but '[t]he shooter was on the other side of the refrigerator and [he] didn't see who it was." *Id*. at 14-15 (quoting

Pugh Affidavit, 10/19/2010 at PCRA Petition, Exhibit 2). The Superior Court concluded as follows:

> Contrary to Appellant's present contention, Pugh's testimony was not so compelling as to obviate the need for Appellant to take the stand in support of a newly contrived self-defense claim. More importantly, Pugh's proposed testimony was completely unnecessary to support Appellant's innocence defense, which was based upon his own statements to trial counsel that he was not present at the scene when he shooting occurred. Accordingly, based upon the evidence available to trial counsel at the time of trial, it was reasonable to present an innocence defense.

*Id*. at 15.

In light of the credibility determinations of the state court, this Court cannot conclude that trial counsel was ineffective for failing to call Pugh as a witness or that trial counsel failed to conduct a reasonable pre-trial investigation. Shegog has failed to show that the decision of the Superior Court was an unreasonable application of *Strickland*. Therefore, this claim for habeas relief will be denied.

### D. Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." .*Id*. Applying those standards here, the Court concludes that jurists of reason would not find it debatable whether each of Shegog's claims should be dismissed. Accordingly, a certificate of appealability will be denied.

### E. Conclusion

For all of the above reasons, the petition for a writ of habeas corpus will be dismissed and no certificate of appealability will be issued.

Dated: April 25, 2018

s/ Cynthia Reed Eddy  
Cynthia Reed Eddy  
United States Magistrate Judge

cc: All counsel of record
 (via ECF electronic notification)